UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 6:22-cr-007-CHB-2, -9 |
| ) | |
| v. ) | |
| ) | **ORDER ADOPTING MAGISTRATE** |
| OAKLEY D. WHITEY HATFIELD, ) | **JUDGE'S RECOMMENDED** |
| JACKLYN R. JOHNSON, ) | **DISPOSITION** |
| ) | |
| Defendants. | |

*** *** *** ***

This matter is before the Court on three related motions: Defendant Oakley D. "Whitey" Hatfield's Motion to Dismiss, [R. 278], in which Defendant Jacklyn R. Johnson joins, [R. 280]; Hatfield's Motion for Leave to File His Motion to Dismiss Out of Time, [R. 291]; and Johnson's Notice of Joinder, which the Court construes as a Motion for Leave to File Late Objections, [R. 388]. Each of these motions is ripe for review. [R. 287; R. 289; R. 293; R. 295; R. 341]. Also before the Court is the Recommended Disposition filed by United States Magistrate Judge Hanley A. Ingram, which recommends denial of the Motion to Dismiss. [R. 289]. Defendant Hatfield filed objections to that recommendation, [R. 290], the United States responded, [R. 293], and Hatfield replied, [R. 295]. Accordingly, the pending motions and Recommended Disposition are now ready for review. For the reason set forth herein, the Court will grant Johnson's Motion for Leave to File Late Objections; overrule the defendants' objections and adopt the Magistrate Judge's Recommended Disposition; deny the Motion to Dismiss; and deny as moot Hatfield's Motion for Leave to File His Motion to Dismiss Out of Time.

## I. BACKGROUND

On February 24, 2022, a grand jury indicted Johnson and eight others with various charges stemming from their connection to a chicken fighting venture in Laurel County, Kentucky, specifically at a location known as the Bald Rock Chicken Pit. [R. 1]. On April 28, 2022, a grand jury returned a Superseding Indictment, adding Hatfield as a defendant. [R. 97].

In the "Background" section of the Superseding Indictment, it explains that, "[a]t all relevant times, the federal Animal Welfare Act defined 'animal fighting venture' as 'any event, in or affecting interstate or foreign commerce, that involves a fight conducted or to be conducted between at least 2 animals for purposes of sport, wagering, or entertainment." *Id.* at 2 (quoting 7 U.S.C. § 2156(f)(1)). It further explains that, "[a]t all relevant times, Bald Rock was an animal fighting venture located in Laurel County, in the Eastern District of Kentucky, operated by Rickie D. Johnson and Jacklyn R. Johnson." *Id.* The Superseding Indictment then goes on to state that, at all relevant times, the Animal Welfare Act prohibited sponsoring or exhibiting animals in an animal fighting venture, *id.* (citing 7 U.S.C. § 2156(a)); possessing, training, selling, buying, transporting, delivering, or receiving an animal for purposes of having that animal participate in an animal fighting venture, *id.* (citing 7 U.S.C. § 2156(b)); using an instrumentality of interstate commerce for commercial speech for purposes of advertising an animal for use in an animal fighting venture or for promoting or furthering an animal fighting venture, *id.* (citing 7 U.S.C. § 2156(c)); and attending an animal fighting venture, *id.* (citing 7 U.S.C. § 2156(a)(2)).

Count I of the Superseding Indictment charges Johnson, Hatfield, and others with knowingly and voluntarily conspiring with each other, and others, to violate the Animal Welfare Act by knowingly sponsoring and exhibiting animals in an animal fighting venture. *Id.* at 3–5.

Count 1 alleges that Hatfield and Johnson's co-defendants rented property in Laurel County, where they "operated regular animal fighting ventures at that location," known as the Bald Rock Chicken Pit. *Id.* at 3. With respect to Hatfield and Johnson, Count 1 alleges that Hatfield assisted his co-defendants "in negotiating the rental agreement at Bald Rock," and Johnson assisted a co-defendant with sponsoring, operating, organizing, and managing the chicken fights. *Id.* Count 1 further alleges that "[t]he Defendants also collected admission fees and sold concessions to the individuals who participated in, and attended, the animal fighting ventures." *Id.* at 4. The overt acts alleged in Count I also include "operat[ing] regular animal fighting ventures at Bald Rock that routinely drew participants from the Eastern District of Kentucky and other states"; collecting admissions fees from individuals who participated in the animal fighting ventures and sharing those proceeds with the owner of the Bald Rock property; and "organiz[ing] and manag[ing] an animal fight at Bald Rock, with approximately eighty people in attendance and 47 entries in the fights, and raising approximately $7,000." *Id.* at 5–6.

Count 7 of the Superseding Indictment "re-alleg[es] and incorport[es] by reference" the Background Section outlined above. *Id.* at 8. That count charges Johnson with knowingly attending an animal fighting venture on or about July 10, 2021, in violation of the Animal Welfare Act. *Id.* at 8. Count 9 similarly "re-alleg[es] and incorport[es] by reference" the Background Section and charges Hatfield with knowingly attending an animal fighting venture on or about that same date in violation of the Animal Welfare Act. *Id.* at 9.

On December 21, 2022, Hatfield filed the pending Motion to Dismiss, seeking dismissal of Count 1 and 9 of the Superseding Indictment. [R. 278]. Hatfield filed a Notice stating her intention to join the Motion to Dismiss. [R. 280]. Though Johnson does not state so in her Notice, the Court understands that she seeks dismissal of Counts 1 and 7 (the only two charges

pertaining to her) for the same reasons stated in Hatfield's motion. The United States filed a response, [R. 283], to the Motion to Dismiss, and Defendant Hatfield replied, [R. 287]. Johnson did not file a reply. The matter was then referred to United States Magistrate Judge Hanly A. Ingram for a report and recommendation. [R. 288].

The Magistrate Judge issued his Recommended Disposition on February 8, 2023, recommending that the Motion to Dismiss be denied as both untimely and premature. [R. 289]. Hatfield then filed objections to the Recommended Disposition, [R. 290], as well as a Motion for Leave to File His Motion to Dismiss Out of Time, [R. 291]. The United States responded to Hatfield's objections and his Motion for Leave to File His Motion to Dismiss Out of Time, [R. 923], and Hatfield replied, [R. 295]. Johnson did not file any objections or otherwise respond to the Recommended Disposition.

On April 18, 2023, Hatfield filed a Motion for Rearraignment, [R. 333], which was granted. [R. 334]. Hatfield's rearraignment is scheduled for May 8, 2023. [R. 336]. Given the pending motions, the Magistrate Judge conducted a telephonic status conference on April 27, 2023. [R. 339]. During that conference call, counsel for Hatfield clarified that he still seeks a ruling on his Motion to Dismiss, and counsel for Johnson indicated that she wished to join in Hatfield's objections to the Recommended Disposition. *Id.* Johnson then filed a Notice of Joinder, which the Court construed as a Motion for Leave to File Late Objections, [R. 338]. The United States has responded to that motion, [R. 341], and Johnson did not reply.

Accordingly, three related motions are currently pending before the Court: the Motion to Dismiss, [R. 278]; Hatfield's Motion for Leave to File His Motion to Dismiss Out of Time, [R. 291]; and Johnson's Motion for Leave to File Late Objections, [R. 388]. Each motion is now fully ripe and ready for review.

## II. ANALYSIS

### A. Motion for Leave to File Late Objections, [R. 388]

Before turning to Hatfield's objections, [R. 290], to the Magistrate Judge's recommendation, the Court first considers whether Defendant Johnson may join in those objections. The Recommended Disposition allowed the parties—including Johnson—to file any objections within seven days of the entry of that recommendation. [R. 289, p. 10]. The Magistrate Judge expressly warned the parties that the "[f]ailure to object per [Federal Rule of Criminal Procedure] 59(b) waives a party's right to review." *Id.*; *see also* Fed. R. Crim. P. 59(b)(2) ("Failure to object in accordance with this rule waives a party's right to review."). Hatfield timely filed objections, [R. 290], but Johnson did not.

In her Motion for Leave to File Late Objections, [R. 388], Johnson explains that she believed she could 'piggy back' on Mr. Hatfield's objection by virtue of [her] joinder in the original motion." *Id.* at 1. In its response in opposition, the United States argues that the objections are untimely under Rule 59(b)(2), and as such, they are waived. [R. 341].

The Court will allow Johnson to join in Hatfield's objections. As the Advisory Committee Notes for Rule 59 explain, the Committee believed that the waiver provisions of Rule 59 "will enhance the ability of a district court to review a magistrate judge's decision or recommendation by requiring a party to promptly file an objection to that part of the decision or recommendation at issue." Fed. R. Crim. P. 59, Adv. Comm. Notes. The Committee has also explained that "[d]espite the waiver provisions, the district judge retains the authority to review any magistrate judge's decision or recommendation whether or not objections are timely filed." *Id.* In this case, Johnson only asks to join in the objections already filed by Hatfield; she is not filing any new objections or adding to Hatfield's arguments. As such, her joinder in Hatfield's

objections does not disrupt or delay this Court's ability to review the Recommended Disposition. And, in fact, the Court will be considering these objections regardless of whether Johnson joins them.

Accordingly, the Court will grant Johnson's Motion for Leave to File Late Objections, [R. 388], and will allow Johnson to join in Hatfield's objections, [R. 290], to the Recommended Disposition.

### B. Motion to Dismiss, [R. 278], Recommended Disposition, [R. 289], and Objections, [R. 290]

The Magistrate Judge recommends denying the Motion to Dismiss as both premature (because it requires weighing facts that should ultimately be determined by a jury) and untimely (because it falls well outside the defensive-motions deadline). [R. 278]. Hatfield objects to the Recommend Disposition, arguing that, pursuant to the Court's scheduling orders, his motion was timely filed; the Superseding Indictment must be dismissed as unconstitutional for the same reasons stated in his Motion to Dismiss; and the Magistrate Judge erred by not assessing the facts as alleged in the Superseding Indictment and determining whether those facts, if proven, could support the specific crime charged. [R. 290]. As already explained, the Court has allowed Johnson to join in these objections. *See supra* Section II(A).

This Court must make a de novo determination of those portions of the Recommended Disposition to which objections are made. 28 U.S.C. § 636(b)(1). Accordingly, the Court considers each of the defendants' objections in turn.

#### 1. The Motion to Dismiss is untimely.

Hatfield first appeared before this Court on May 13, 2022. [R. 147]. That same day, the Court entered its Scheduling Order, [R. 148], and Standing Pretrial and Trial Management Order, which provided that defense motions were due within thirty-five days of the entry of that order,

- 6 -

or by June 17, 2022. [R. 148-1, p. 6]. Hatfield was first appointed counsel, but ultimately retained two attorneys, who entered their appearance on July 19, 2022. [R. 167; R. 168]. The present Motion to Dismiss was filed on December 21, 2022, [R. 278], or over six months past the defensive-motions deadline and over five months after current counsel first appeared in the case. As the Magistrate Judge noted in his Recommended Disposition, "[t]he facts underlying the motion are either included in the Superseding Indictment or come from Hatfield's own knowledge of the events." [R. 289, p. 8]. As such, "there does not appear to be any good cause for they delay (such as a need to review late discovery) aside from perhaps defense counsel's misunderstanding of the deadline." *Id.* at 8–9.

Hatfield and Johnson do not object to the Magistrate Judge's characterization of the facts underlying the Motion to Dismiss. *See* [R. 290]. Instead, they argue that the Magistrate Judge's calculation "fails to take into consideration the context, and language, of the Court's prior scheduling orders." *Id.* at 2. For support, the defendants point to the Court's November 16, 2022 Order Setting Trial Date, in which the Court set a jury trial for March 21, 2023 and ordered that "[a]ll pretrial filings and deadlines set forth in the Court's Standing Pretrial and Trial Management Order [R. 46-1; R. 148-1] shall be relative to this new trial date." [R. 257, p. 1]. The Court's earlier Standing Pretrial and Trial Management Order provided that defensive motions "shall be filed **no later than thirty-five (35) days after entry of this Order**." [R 148-1, p. 6 (emphasis in original)]. Relying on this language, the defendants argue that "it was reasonable for Hatfield to conclude that *all* deadlines from the original order were extended," including the defensive motions deadline. [R. 290, p. 2]. Thus, the defendants argue, the Motion to Dismiss was timely filed within thirty-five days of the Court's November 16, 2022 Order

- 7 -

Setting Trial Date. *Id.* Alternatively, they argue that the language in that order is ambiguous and must be construed in their favor. *Id.* at 3.

The Court disagrees and will overrule this objection. The plain and unambiguous language of the November 16, 2022 Order Setting Trial Date clearly provides that "[a]ll pretrial filings and deadlines" set forth in its Standing Pretrial and Trial Management Order "shall be relative *to this new trial date*." [R. 257 (emphasis added)]. The defensive-motions deadline set forth in the Standing Pretrial and Trial Management Order is not tied to the trial date, however. That order clearly states that any defensive motions must be filed within thirty-five days of the entry of that order. [R 148-1, p. 6]. A new trial date does not affect that deadline. This is in contrast to motions for rearraignment, which must be filed no later than fourteen days "before the scheduled trial date," or motions in limine, which must be filed "on or before fourteen (14) days prior to trial," or *Daubert* motions, which must be filed "on or before twenty-one (21) days prior to trial." *Id.* at 4, 6. Other deadlines in the Standing Pretrial and Trial Management Order are also tied to the scheduled trial date, such as the response and reply deadlines for motions in limine and *Daubert* motions. *Id.* at 6. But the defensive-motions deadline is clearly tied to the date of the entry of the Standing Pretrial and Trial Management Order—not the scheduled trial date. As such, that deadline is unaffected by any changes to the trial date.

The Court acknowledges that current defense counsel appeared on Hatfield's behalf shortly after the expiration of the defensive-motions deadline. *See* [R. 167; R. 168]. However, as the Magistrate Judge correctly noted, the facts underlying the Motion to Dismiss were either apparent on the face of the Superseding Indictment or were otherwise known to the defendants. *See* [R. 289, p. 8]. Neither Hatfield nor Johnson dispute this. And, as they point out in their objections, they could have sought an extension of the defensive-motions deadline under Rule

12(c)(2). *See* R. 290, p. 2. Rather than promptly request such an extension, the defendants waited several months and filed the pending Motion to Dismiss. They provide no good cause for their delay. *See* Rule 12(c)(3) (explaining that the Court may consider a defense, objection, or request if the party shows good cause).

The Motion to dismiss is therefore untimely, *see id.*, and will be denied. Further, as explained below, even if the Court were to excuse the untimeliness of the Motion to Dismiss, it would still deny the motion.

> **2. The Superseding Indictment sufficiently alleges an interstate connection, and consideration of facts outside the Superseding Indictment is inappropriate at this stage of the proceedings.**

An indictment must comply with Federal Rule of Criminal Procedure 7. That rule requires an indictment to provide a "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Thus, an indictment must "first, contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend, and second, enable[] him to plead an acquittal or conviction in bar of future prosecutions." *United States v. Easley*, 5:20-CR-1-TBR, 2020 WL 1310486, at *2 (W.D. Ky. Mar. 19, 2020) (quoting *United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010)) (internal quotation marks omitted). Generally, an indictment is presumed sufficient if it "uses the statutory language of the offense to state the charge . . . so long as such language 'fully and unambiguously states all of the elements of the offense.'" *Id.* (quoting *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007)). These recitations "must be accompanied by a statement of facts to inform the defendant of the specific offense with which he is charged." *Id.* (citation omitted). In other words, "[a]n indictment must assert facts . . . which, if proved,

- 9 -

would establish *prima facie* the defendant's commission of [the] crime." *Id.* (quoting *United States v. Younes*, 194 F. App'x 302, 307 (6th Cir. 2006)) (internal quotation marks omitted).

A defendant may challenge the sufficiency of an indictment through a pretrial motion to dismiss. Such motions are governed by Federal Rule of Criminal Procedure 12. That rule allows a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). It further provides that certain defenses—including an alleged defect in the indictment—*must* be raised by pretrial motion so long as "the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(B). Thus, Rule 12 "and its component parts encourage district courts to entertain and dispose of pretrial criminal motions before trial if they are capable of determination without trial of the general issues." *United States v. Levin*, 973 F.2d 463, 467 (6th Cir. 1992).

Rule 12 motions are generally capable of pretrial resolution "if they raise questions of law rather than fact." *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976); *see also United States v. Thompson*, No. 6:19-CR-22-REW-HAI, 2020 WL 4939114, at *1 (E.D. Ky. Aug. 24, 2020) (citing *Jones*, 542 F.2d at 664). However, "district courts may make preliminary findings of fact necessary to decide questions of law" presented in a motion to dismiss "so long as the trial court's conclusions do not invade the province of the ultimate finder of fact." *Levin*, 973 F.2d at 467; *see also Jones*, 542 F.2d at 664. Accordingly, a defense raised in a Rule 12 motion is "'capable of determination' if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *Jones*, 542 F.2d at 664 (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)). However, when a defendant claims that the indictment's allegations "are false or untrue, this is not a question of law, but

rather fact to be tried by a jury." *United States v. Lundergan*, 5:18-cr-00106-GFVT-MAS, 2019 WL 1261354, *2 (E.D. Ky. Mar. 18, 2019) (citation omitted).

Through Rule 12, a defendant may challenge the sufficiency of an indictment, or in other words, argue that the indictment fails to state an offense. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). A defendant may also argue that an indictment is defective if it "alleges a violation of an unconstitutional statute." *United States v. Brown*, 715 F. Supp. 2d 688, 689 (E.D. Va. 2010) (citing *In re Civil Rights Cases*, 109 U.S. 3, 8–9 (1883)); *see also United States v. Rife*, 429 F. Supp. 3d 363, 366 (E.D. Ky. 2019) (explaining that a defendant may "challenge a defect in the indictment, including its constitutionality, via a pretrial motion to dismiss" under Rule 12). When raising a constitutional challenge, the defendant may attack the underlying statute as "unconstitutional in all of its applications," i.e., a facial attack. *Rife*, 429 F. Supp. 3d at 366 (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)). Alternatively, a defendant may raise an "as-applied" challenge by alleging "that the statute in question is unconstitutional as applied to the defendant's alleged conduct." *Id.* (citation omitted). As-applied challenges generally "involve[] questions of law and fact." *United States v. Hill*, 700 F. App'x 235, 237 (4th Cir. 2017).

In this case, Hatfield and Johnson seek dismissal under Rule 12(b) because, they argue, the Superseding Indictment violates the Commerce Clause of the United States Constitution. *See* [R. 278, p. 1; R. 278-1]. More specifically, Hatfield and Johnson argue that the Superseding Indictment "bases federal jurisdiction on alleged activities which were conducted wholly intrastate by intrastate actors." [R. 278-1, p. 1]. Because "[t]he alleged conduct had no connection to or effect upon interstate commerce," the defendants argue, the Animal Welfare Act is unconstitutional as applied to Hatfield and Johnson, and Counts 1, 7, and 9 must be dismissed.

- 11 -

*Id.* at 1; *see also id.* at 19 ("Because the [Superseding] Indictment fails to allege anything more than intrastate conduct having no apparent connection to or substantial effect upon interstate commerce, § 2156(a) [of the Animal Welfare Act] is unconstitutional, as applied to [the defendants].").[1] The defendants therefore raise an as-applied challenge to the Animal Welfare Act. *See, e.g.*, [R. 278-1, p. 2 (Section 2156 is unconstitutional as applied to Hatfield [and Johnson]."); *id.* at 3 ("An *as-applied* challenge, such as Hatfield's [and Johnson's] here. . . ." (emphasis in original)).

Before considering the defendants' as-applied challenge, the Court first notes that the defendants have *not* raised a facial challenge to the Animal Welfare Act. In the Motion to Dismiss, Hatfield states that the statute is unconstitutional "as applied to Hatfield," and he repeatedly challenges the statute "as applied" to him. *See, e.g.*, [R. 278-1, pp. 2, 3, 6, 19]. The Magistrate Judge pointed this out in his recommendation, [R. 289, p. 5], but also noted that Hatfield cited authority concerning *facial* challenges to the Animal Welfare Act. *Id.* at 6 n.1. The Magistrate Judge did not address the merits of such a challenge but did note that such challenges have failed in other courts. *Id.* (citations omitted). Nevertheless, the Magistrate Judge explained that the parties could, if necessary, clarify in their objections that they intended to raise a facial challenge. *Id.* Neither Hatfield nor Johnson has raised such an issue in their objections.

The Court now turns to the defendant's as-applied challenge. On this issue, the Magistrate Judge first explained that Hatfield and Johnson's argument that the case involves purely intrastate activity "directly contravenes the Superseding Indictment." [R. 289, p. 6]. The Magistrate Judge went on to cite the following facts contained in the Superseding Indictment: the

---

[1] The defendants sometimes state that the *Superseding Indictment* is unconstitutional as applied to Hatfield and Johnson. *See, e.g.*, [R. 290, p. 4]. The Court understands, however, that Hatfield and Johnson argue that the Superseding Indictment is unconstitutional and therefore defective because the Animal Welfare Act, as applied to Hatfield and Johnson, violates the Commerce Clause.

"regular animal fighting ventures at Bald Rock . . . routinely drew participants from the Eastern District of Kentucky and other states," and admission fees were collected from the Bald Rock participants. *Id.* at 7; *see also* [R. 97, p. 4–5]. But the defendants asked the Court to reject those factual allegations of interstate activity and find that the Superseding Indictment alleged only intrastate activity by intrastate actors. For example, Defendants argue in their Motion to Dismiss that "[t]he [Superseding] Indictment bases federal jurisdiction on alleged activities which were conducted wholly intrastate by intrastate actors. The alleged conduct had no connection to or effect upon interstate commerce." *See* [R. 278-1, p. 1]. From this, Defendants insist that the Animal Welfare Act, as applied to them, is unconstitutional. *See generally* [R. 278-1]. But Defendants' factual assertions are not apparent on the face of the Superseding Indictment and would therefore require the Court to make factual determinations. Stated another way, the defendants asked the Court to make factual findings in order to resolve the issues raised in the Motion to Dismiss. More specifically, Defendants ask the Court to determine whether the alleged activities were conducted wholly within the state of Kentucky, by purely "intrastate actors," and whether the alleged conduct had any connection or effect upon interstate commerce, and to what extent.

The Magistrate Judge correctly concluded that it could not make such factual findings when considering a Rule 12 motion to dismiss. As already noted, Rule 12 allows the district court to resolve of a pretrial motion if the motion is "capable of determination without trial of the general issues." *Levin*, 973 F.2d 467. And while the rule allows a district court to make preliminary findings of fact to resolve *questions of law* raised in a pretrial motion to dismiss, it does not allow the district court to "invade the province of the ultimate finder of fact." *Levin*, 973 F.2d at 467; *see also Jones*, 542 F.2d at 664. Accordingly, the Court agrees with the Magistrate

Judge's conclusion that the Court should not consider any extraneous facts to conclusively decide whether Defendants' conduct was in or affecting interstate commerce.

On this point, the Court notes that the defendants frame their Motion to Dismiss as an as-applied constitutional challenge to the Animal Welfare Act, and in their objections, they argue that the Court should look only to the facts alleged in the Superseding Indictment. *See* [R. 278; R. 290]. Nevertheless, the defendants also dispute the factual allegations in the Superseding Indictment and attempt to disprove those facts by references to facts and evidence outside the Superseding Indictment. For example, the Superseding Indictment alleges that the Bald Rock chicken fighting events "routinely drew participants from the Eastern District of Kentucky and other states." [R. 97, p. 4]. In their Motion to Dismiss, the defendants insist (without proof) that the Bald Rock operators would not have allowed any "outsiders" to attend, ostensibly arguing that no out-of-state participants were allowed. *See* [R. 278-1, p. 2]. The United States likewise proffers evidence and facts beyond the Superseding Indictment. *See, e.g.* [R. 293]. But a motion seeking dismissal of an indictment under Rule 12 is "not 'an opportunity to argue the sufficiency of the evidence.'" *United States v. Silvius*, No. 1:12-CR-172, 2012 WL 5878841, at *2 (N.D. Ohio Nov. 21, 2012). And where a defendant claims that the indictment's allegations "are false or untrue, this is not a question of law, but rather fact to be tried by a jury." *Lundergan*, 2019 WL 1261354, *2 (citation omitted). Weighing the evidence cited by the parties to determine whether the United States can *prove* a sufficient interstate connection—an essential element of the charged offenses—would invade the province of the jury, as the Magistrate Judge correctly pointed out in his Recommended Disposition. *See* [R. 289, p. 4].

Nevertheless, the defendants attempt to clarify their position in their objections to the Recommended Disposition. [R. 290]. There, the defendants cite to Rule 7 for the first time and

argue that the Superseding Indictment is legally insufficient on its face because it "alleges no facts which, if proven, would establish that Hatfield [or Johnson] violated and/or conspired to violate 7 U.S.C. § 2156." *Id.* at 4. More specifically, they argue that the Superseding Indictment "does not allege facts which sufficiently connect the alleged 'animal fighting venture' to interstate commerce." *Id.* at 5.

To the extent that the Magistrate Judge did not consider this specific argument, the Court disposes of it now. In doing so, the Court is mindful that "[a] challenge to the sufficiency of the indictment . . . is ordinarily limited to the allegations contained in the indictment," and the Court must accept those allegations as true. *Hill*, 700 F. App'x at 236 (*quoting United States v. Eagle*, 676 F.3d 405, 415 (4th Cir. 2012)). Further, the Court may not dismiss an indictment "on a determination of facts that should have been developed at trial." *Id.* (quoting *Eagle*, 676 F.3d at 415) (internal quotation marks omitted).

In addition to alleging that the animal fighting venture at Bald Rock regularly attracted participants from other states and that those out-of-state participants paid admissions fees, the Superseding Indictment also defined "animal fighting venture" as "any event, in or affecting interstate or foreign commerce, that involves a fight conducted or to be conducted between at least 2 animals for purposes of sport, wagering, or entertainment." [R. 97, p. 2 (quoting 7 U.S.C. § 2156(f)(1))]. The Superseding Indictment goes on to state that, during all relevant times, "Bald Rock was *an animal fighting venture* located in Laurel County, in the Eastern District of Kentucky." *Id.* (emphasis added). In Count 1, these statements are realleged and incorporated by reference. *Id.* at 3. That count then goes on to allege that Johnson, Hatfield, and others[2] "knowingly and voluntarily conspired with each other, and others, to violate laws of the United

---

[2] Because Count 1 is a conspiracy charge, Hatfield and Johnson are also liable for their co-defendants' acts taken in furtherance of the conspiracy. *See generally United States v. Carrano*, 340 F. Supp. 3d 388, 394 (S.D.N.Y. 2018).

States, that is 7 U.S.C. § 2156, to knowingly sponsor and exhibit animals in *an animal fighting venture*." *Id.* (emphasis added). As another example, the Superseding Indictment alleges that Johnson assisted another co-defendant in operating "regular *animal fighting ventures* at Bald Rock." *Id.* at 4 (emphasis added). And it further alleges that Hatfield assisted his co-defendants in negotiating the Bald Rock rental agreement. *Id.* at 3. Counts 7 and 9 similarly reallege and incorporate the definition of "animal fighting venture" and allege that both Johnson and Hatfield "knowingly "attend[ed] an *animal fighting venture*." *Id.* at 8, 9 (emphasis added). Each reference to an "animal fighting venture" is, necessarily, a reference to "any event, *in or affecting interstate or foreign commerce*, that involves a fight conducted or to be conducted between at least 2 animals for purposes of sport, wagering, or entertainment." [R. 97, p. 2 (quoting 7 U.S.C. § 2156(f)(1)) (emphasis added)].

Even if Hatfield and Johnson argued—which they did not—that the repeated use of the phrase "animal fighting venture" is merely a conclusory restatement of the statute's elements, the Supreme Court has explained that "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Hamling v. United States*, 418 U.S. 87 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)); *see also Resendiz-Ponce*, 549 U.S. at 109 (noting that "an indictment parroting the language of a federal criminal statute is often sufficient"). Further, to the extent "animal fighting venture" is a legal term of art, courts have found the use of such terms of art to sufficiently put a defendant on notice of the charge he or she faces. *See United States v. Huff*, No. 3:10-CR-73, 2011 WL 2414553, at *7 (E.D. Tenn. June 10, 2011) (considering pretrial motion to dismiss and finding that the legal term of art "civil

disorder" did not need to be defined in order to put the defendant on notice of the charge alleged (citing *Hamling*, 418 U.S. at 118; *Resendiz-Ponce*, 549 U.S. at 209); *United States v. Carrano*, 340 F.Supp.3d 388, 389 (S.D.N.Y. 2018) (considering posttrial motion to dismiss and finding that the indictment sufficiently alleged an impact on interstate commerce where it included a legal term of art—namely, "animal fighting venture"—that directly imported the required interstate impact).

Here, the Superseding Indictment not only uses the phrase "animal fighting venture," but it expressly defines it as "any event, *in or affecting interstate or foreign commerce*, that involves a fight conducted or to be conducted between at least 2 animals for purposes of sport, wagering, or entertainment." [R. 97, p. 2 (quoting 7 U.S.C. § 2156(f)(1)) (emphasis added)]. The Court finds that, in doing so, the Superseding Indictment directly imports the required interstate impact. *See generally Carrano*, 340 F. Supp. 3d at 389; *see also Hill*, 700 F. App'x at 236–37. It therefore survives the Rule 12 Motion to Dismiss to the extent the defendants argue that the Superseding Indictment is insufficient on its face for failure to allege an interstate connection, as required under the Animal Welfare Act.

In sum, the Court finds that the Superseding Indictment is legally sufficient on its face and does not present an unconstitutional exercise of Congressional power. *See generally Hill*, 700 F. App'x at 236–37. Further, to the extent that facts beyond the Superseding Indictment might prove or disprove the interstate connection element of the charged offenses, the Court cannot consider such facts when ruling on this Motion to Dismiss. *See id.* at 237. In other words, the Court cannot resolve that issue "without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(B). To do so would be to "invade the province of the ultimate finder of fact," the jury. *Levin*, 973

F.2d at 467; *see also Jones*, 542 F.2d at 664. As such, any argument involving these extraneous facts is premature. For these reason, denial of the Motion to Dismiss is warranted.

### C. Motion for Leave to File Motion to Dismiss Out of Time, [R. 291]

As already explained, the Magistrate Judge cited multiple reasons for denying Hatfield's Motion to Dismiss. *See* [R. 289]. The Court has overruled the defendants' objections to that analysis and, for the reasons already stated, will deny the Motion to Dismiss because the motion is untimely and regardless, the Superseding Indictment was legally sufficient on its face and consideration of extraneous facts would be improper. Accordingly, even if the Court were to grant Hatfield's Motion for Leave to File Motion to Dismiss Out of Time, [R. 291], the Court would still deny the Motion to Dismiss. Further, as the Court has already explained, the defendants have failed to demonstrate good cause for their failure to timely file the motion. The Court will therefore deny as moot Hatfield's Motion for Leave to File Motion to Dismiss Out of Time, [R. 291].

### III. CONCLUSION

For the reasons set forth above **IT IS HEREBY ORDERED** as follows:

1. Defendant Johnson's Notice of Joinder, which the Court construes as a Motion for Leave to File Late Objections, [**R. 388**], is **GRANTED**.

2. Defendant Hatfield's Objections, [**R. 290**], in which Defendant Johnson joins, are **OVERRULED.**

3. The Magistrate Judge's Recommended Disposition, [**R. 289**], is **ADOPTED** as the opinion of this Court.

4. Defendant Oakley D. Whitey Hatfield's Motion to Dismiss, [**R. 278**], in which Defendant Jacklyn R. Johnson joins, is **DENIED**.

5. Defendant Oakley D. Whitey Hatfield's Motion for Leave to File His Motion to Dismiss Out of Time, [**R. 291**], is **DENIED as moot**.

This the 4th day of May, 2023.

*Claria Horn Boom*

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF KENTUCKY